■ COMMISSIONERS OF THE STATE INSURANCE FUND, Respondents, v NEWS WORLD COMMUNICATIONS, INC., Appellant.—Order, Supreme Court, New York County, entered September 26, 1979, which, with minor exceptions, denied defendant's motion seeking, *inter alia,* an order striking certain of plaintiffs' interrogatories and its notice for discovery and inspection in its entirety and which, implicitly, granted plaintiffs' cross motion for an order compelling defendant to answer the challenged interrogatories and to pro-

duce the contested documents for discovery and inspection, affirmed, with costs and disbursements. While at first blush the interrogatories served upon defendant may appear unduly burdensome and oppressive, it is important to examine the background of this litigation in order to place the relevancy of the information sought in proper perspective. The State Insurance Fund sues to recover unpaid premiums from defendant to whom it provided workers' compensation and disability benefits insurance. Defendant is a publisher of what it describes as a secular, general interest daily newspaper, *The News World,* with a daily circulation of approximately 25,000 issues. A significant portion of its distribution is by home delivery. Defendant alleges that its initial funding was received from businesses controlled by members of the Unification Church and that many, but not all, of its employees and officers are members of the church. As the "insurer of last resort" the fund must furnish insurance to any employer who requested coverage. Unable to obtain adequate and complete information from defendant about the extent of its operations and the number of workers it engaged, the fund based the premium on its best estimate of the number of employees and their rates of pay. A premium was established at a 700% differential above board rates to reflect unusual insurance conditions. At defendant's request, and on a promise that full disclosure would be made, the fund agreed to audit defendant's books and records. A two-day audit was frustrated by defendant's persistent refusal to provide information about the extent of its operations and the number of workers engaged in those operations. For instance, the fund's auditor was advised that no "admitted" employee had actually been paid from October 15, 1977 through January 6, 1978, except in the two-week period ending December 10, 1977. In addition, no payroll had been set up for any period other than the two-week period ending December 10, 1977. After this action was commenced, the fund refrained from commencing pretrial discovery when defendant agreed to provide documents showing the number of employees and their salaries. The response four months later was an affidavit which has been characterized, not unfairly, as a six-page sketch of defendant's proposed findings of fact and conclusions of law, to which was appended a barely legible exhibit consisting of bills sent to certain newspaper dealers for the week ending February 12, 1979. In short, defendant's position throughout has been that it employs virtually no employees and to the extent it has employees it pays them next to nothing. Defendant's basic contention is that the discovery requests are "irrelevant, immaterial enormously burdensome and improper" and seek "confidential information." Defendant does not plead inability to answer the interrogatories or to produce the documents, but rather that it should not be required to do so. We find the interrogatories, while detailed and exhaustive, to be necessary to a resolution of defendant's contention that the fund improperly determined premiums. Premium determination is based upon the number of employees; the type of work performed; and the amount, nature and source of the remuneration given for the work. Many of the interrogatories are designed to determine the existence of an employer-employee relationship. Such a determination must be made not by construing contractual formalities, but rather by assessing the realities in the particular relationship. Thus, questions as to the van routes and those who participate in distribution, whether they be dealers or carriers, have relevancy. If defendant's version of its operation were accepted, either the newspapers take flight or phantom couriers emerge from the night air. The inquiries as to defendant's relationship with the Unification Church and its affiliates are compelled by defendant's

affirmative defense that the fund's premium calculation was unconstitutionally motivated by religious bias. Having raised the issue, it ill behooves defendant to complain because interrogatories are directed to explore the basis of that claim. Nor do we find that the interrogatory device is being abused here. Commentators to the Civil Practice Laws and Rules have observed that in dealing with a corporate party, as is defendant, "The initial service of interrogatories may set the stage for a more meaningful deposition, which suggests that the interrogatories should come first." (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3131:2, p 677.) Merely because the interrogatories are burdensome is no reason to strike them. If their use verges on harassment or seeks irrelevant information we would, of course, find differently. But we note that an attempt was made by Special Term to restrict their scope by striking the requirement that defendant state the addresses of individuals and the location of any business. Finally, we find that the fund's use of the notice to produce in conjunction with its interrogatories was not improper. Concur—Sullivan, J. P., Ross, Lupiano and Bloom, JJ.

Silverman, J., dissents in a memorandum, as follows: I would reverse the order appealed from, grant the protective order, and strike the interrogatories, without prejudice to further disclosure proceedings limited to matter directly related to the amount of premiums due from defendant to plaintiff. In my view, the present interrogatories should be stricken because (a) they are excessively burdensome, and (b) they constitute an unwarranted effort to explore the ramifications and funding of a religious organization, the Unification Church. The action is by the State Insurance Fund to recover premiums for workers' compensation and disability insurance on employees of defendant News World Communications, Inc., publishers of a newspaper *The News World*. There is no real dispute that the newspaper is intimately connected with the church. The interrogatories cover 20 pages, including five pages of definitions and instructions which increase their scope, and the burden of answering them, exponentially. Examination of the interrogatories reinforces the impression of their excessive burdensomeness. They cover such questions as the businesses controlled by members of the Unification Church; the funding of *News World* and its connection with the Unification Church and the businesses controlled by it; the persons responsible for the funding; the detailed route followed by each of the vans which deliver *The News World* to dealers; the changes in those routes; each person who during all, or any part of the period, drove or was present in any capacity in any such van; the names of dealers or newsstands to which *The News World* was delivered; the relationship of dealers, newsstand owners, persons in the vans, to the Unification Church; who provided the vans and all agreements relating thereto; etc, etc. Various interrogatories require the identification of "all documents and communications relating in any way to, or constituting" various subjects, including initial funding, billing and payment for the newspaper, prices charged to subscribers or nonsubscribing purchasers of the newspaper, complaints, communications of various kinds including communications with any Federal, State or local tax or regulatory authority, payroll, taxes, marketing plans, circulation, with daily and monthly circulation breakdowns, subscriptions to the newspaper, etc. While some of these questions are pegged to statements in defendant's answer, it appears to me that that is a mere pretext for a broad scale inquiry into the affairs of the Unification Church. Such an inquiry, with its overtones of violation of First Amendment rights, should be no part of a determination of the

amount of premiums due for workers' compensation and disability insurance.